PER CURIAM.
Appellant, which was defendant in the trial court, here seeks reversal of an adverse final judgment entered by the learned trial judge in favor of the plaintiff, appellee here. The final judgment here appealed provides as follows:
“This Cause came on to be heard before the Court and the Court having received evidence and considered Argument of Counsel finds as follows:
“1. That the Plaintiff and Defendant entered into an Agreement on September 26, 1968 which was subsequently amended on November 25, 1968 to convey certain property owned by the Plaintiff as right-of-way for the construction and maintenance of the Cross-Florida Barge Canal in consideration of the sum of $476,200.
“2. That it was represented to the Plaintiff by the Defendant that the lands described in the Agreement would be used as a part of the Eureka Pool of the Cross-Florida Barge Canal Project and would provide the remaining lands of the Plaintiff with proximity to the Eureka Pool which would specifically enhance the value of the remaining 4,000 acres of contiguous land owned by the Plaintiff.
“3. That simultaneously with the execution of the Agreement to Convey on September 26, 1968, the Plaintiff also executed in favor of the Defendant a right-of-entry for construction.
“4. That on December 9, 1968, based upon the representations of the Defendant that the Eureka Pool would be created by the construction of the Cross-Florida Barge Canal within a reasonable period of time and in consideration of the payment by the Defendant to the Plaintiff, the sum of $62,313 for the land and the sum of $416,587 for the timber and in consideration of the sum of $2,300 in severance damages to that part of the remaining lands which would not be enhanced by having proximity to the Eureka Pool, the Plaintiff conveyed to the Defendant by Deed, 1,708.74 acres of land and the timber thereon.
“5. That subsequent to the conveyance to the Defendant on December 9, 1968, the Defendant has harvested or sold timber of the value of $80,351.50.
“6. That, except for the representations of the Defendant which the Plaintiff believed and upon which the Plaintiff relied concerning the creation of the Eureka Pool and the construction of the Cross-Florida Barge Canal, thereby specifically enhancing the value of the remaining 4,000 acres of land of the Plaintiff, the Plaintiff would not have conveyed the lands described in the Agreement and Deed.
“7. That the Defendant is in possession of the lands described in the Agreement and Deed and has not conveyed said lands to any other party. That almost nine years has elapsed since the execution of the Agreement to purchase the rights-of-way and the Deed conveying the rights-of-way and no part of the Eureka Pool has been constructed. The failure to receive the enhancement in value to its remaining lands by the creation of the Eureka Pool and construction of the *1062 Cross-Florida Barge Canal amounts to a constructive fraud by the Defendant upon the Plaintiff requiring the cancellation and recision of the conveyance upon certain conditions being met.
“It is therefore ordered and adjudged: “1. That upon the happening of any of the following events:
“A. That Congress of the United States of America deauthorizes the Cross-Florida Barge Canal Project.
“B. The United States Congress fails to appropriate funds for the construction of the Cross-Florida Barge Canal and the Eureka Pool, within four years from the date hereof.
“C. The legislature of the State of Florida abolishes the Defendant or attempts to transfer its assets in conjunction with such abolishment or otherwise.
“D. The legislature of the State of Florida enacting legislation prohibiting the construction of the Cross-Florida Barge Canal and the Eureka Pool.
“The title to the following described lands to wit:
[lengthy legal description] shall revest in the Ocala Manufacturing Company, successor in interest to Ocala Manufacturing, Ice & Packing Company, upon the deposit in the registry of this Court of the sum of $395,848.50.
“DONE AND ORDERED in Ocala, Marion County, Florida, this 28th day of September, 1977.”
The record on appeal reveals sufficient competent evidence to sustain the factual recitals contained in the final judgment and those necessarily implicit in the legal conclusions reached.
Because this opinion has considerable potential impact both on the law of contracts and eminent domain and on the disposition of other existing and future claims arising out of the suspension of the Cross-Florida Barge Canal, and associated improvements, we deem it appropriate to mention the particular features of the case which influence our decision.
The trial court has ordered the reconveyance of lands deeded by Ocala Manufacturing, Ice & Packing Company, Inc., to the Canal Authority on December 6, 1968. That conveyance is to be effected upon the happening of one of several events which will finally terminate the canal project, or upon the failure of a federal appropriation to carry on the project by September 28, 1981. In return, Ocala Manufacturing Company, successor to the grantor corporation, is to repay the purchase price it received in the 1968 transaction, less the value of timber harvested by the Canal Authority in the interim.
Several serious questions are presented on this appeal by the Canal Authority and its supporting amicus, the Governor. Yet, from the appearance of the 46-page transcript of the final hearing before a trial judge who theretofore was unfamiliar with the case, the Canal Authority assumed its present adversary position only after the final judgment was entered. On several of the questions now extensively briefed by the Canal Authority and its supporting ami-cus, the Canal Authority was acquiescent or silent before the trial court. It is inappropriate that we disturb a judgment rendered in those circumstances.
Whether the rescission is viewed as ordered for “constructive fraud,” or for failure of consideration, or for impossibility of performance, the trial court’s judgment is not contrary to Canell v. Arcola Housing Gorp., 65 So.2d 849 (Fla.1953) nor violative of the statute of frauds, Section 725.01, Florida Statutes (1977). The agreement for conveyance and the deed itself contained sufficient references to the “Eureka Pool” and its contours, as established by the taking line, to remove the agreement from the effect of the statute. All other potential issues went by the board in the trial court.
AFFIRMED.
BOYER, Acting C. J., and SMITH and BOOTH, JJ., concur.